UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20710-CR-ALTONAGA(s)(s)

UNITED STATES OF AMERICA

vs.

MANGALA RAMAMURTHY,

Defendant.

## FACTUAL PROFFER

The office of the United States Attorney for the Southern District of Florida and the Defendant Mangala Ramamurthy, M.D. ("Defendant") stipulate and agree that the following facts are true and correct and that such facts provide a sufficient factual basis for a plea of guilty to Count 39 of the Second Superseding Indictment, which charges Defendant with conspiracy to defraud the United States and to receive health care kickbacks, in violation of Title 18, United States Code, Section 371.

Beginning in or around July of 2016 through at least December of 2017, Defendant, her son Senthil Ramamurthy, John Scholtes and others conspired to defraud the United States and to receive health care kickbacks by targeting Medicare beneficiaries to receive expensive and medically unnecessary CGx testing from Laboratory 1 located in the Northern District of Georgia. Medicare is a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), and a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f). CGx testing

is a highly complex and specialized type of genetic test designed to look for errors in genes that are associated with cancer. Medicare authorizes payment for CGx testing only in limited circumstances.

Defendant is a duly licensed physician authorized to practice medicine in the state of Texas. At times relevant to the charged conspiracy Defendant was a principal of Valley Internal Medicine, Geriatric and Diabetic Center, P.A., (Valley Internal Medicine), a medical clinic located in the McAllen Division of the Southern District of Texas that purportedly provided medical services to Medicare patients. Valley Internal Medicine and Laboratory 1 are authorized Medicare "providers" as defined by Title 42, Code of Federal Regulations, Part 400.202. A provider may use their provider number to file claims with Medicare to obtain reimbursement for services rendered to Medicare beneficiaries. When submitting claims to Medicare for reimbursement, providers certify that: (1) the contents of the claims are true, correct, and complete; (2) the claims are prepared in compliance with the laws and regulations governing Medicare including the Anti-Kickback Statute; and (3) the services purportedly provided, as set forth in the claims, are medically necessary.

As part of this scheme, the Defendant knew that co-conspirators Senthil Ramamurthy and Scholtes negotiated a kickback arrangement with Laboratory 1 where the lab agreed to pay money for each CGx test referred by Senthil Ramamurthy's company, Q Health Services, LLC. ("Q Health").

In furtherance of the scheme, Defendant and her co-conspirators targeted locations where Medicare beneficiaries were known to be in high concentration such as, for example,

adult day care and senior living centers and health fairs. For her part, Defendant and/or Individual 1., Valley Internal Medicine's Office Manager, who had no medical training, travelled to adult day care centers in and around McAllen, Texas to: (1) gain access to the centers; (2) identify Medicare patients and have them complete a cancer family history questionnaire; and (3) collect a DNA saliva sample that Individual 1 transported back to Valley Internal Medicine. Upon Individual 1's return, Defendant signed a requisition form authorizing a CGx test for each Medicare beneficiary.

Defendant ratified these orders for CGx tests without examining patients, for which she had no valid doctor-patient relationship with at any time. Defendant created "medical records," which were almost identical for each of these Medicare beneficiaries. In all, in furtherance of the above-described scheme, Defendant ordered/referred CGx testing for approximately 131 Medicare beneficiaries for which Medicare paid Laboratory 1 the approximate sum of $539,110. Laboratory 1 in turn paid Senthil Ramamurthy approximately $242,599 in kickbacks tied to Defendant's referrals. In addition, Defendant ordered CGx testing for more than 100 more Medicare beneficiaries with whom she had a prior relationship.

Defendant and her co-conspirators committed the following overt acts, among others: (1) on or about September 22, 2016, Defendant completed and submitted to Laboratory 1, a Provider's Preferred Order Form and provider authorization; (2) on or about November 16, 2016 and December 14, 2016, respectively, Defendant signed requisition forms ordering CGx testing for Medicare patients M.M. and A.C; and (3) on or about February 1, 2017, Laboratory 1 paid Senthil Ramamurthy a kickback in the

approximate sum of $74,217, and this amount included a payment for the referral of Medicare patient A.C. The government is not presently aware of any evidence that Defendant personally profited from the referral of compounded medications to Pharmacy 2 or CGx test samples to Laboratory 1.

In addition to the foregoing, Defendant admits that she also wrote prescriptions for compounded medications for approximately 17 Tricare patients, and that in connection with writing these prescriptions, she did not perform medical consultations to ascertain whether those medications ultimately dispensed were medically necessary. As a result of the Defendant's conduct Tricare paid claims to Pharmacy 2 in the approximate sum of $756,023. At times relevant to this conduct, Defendant was not a medical provider under Tricare, and did not have any Tricare patients. The parties agree that this conduct is relevant conduct under Section 1B1.3 of the sentencing guidelines.

The Defendant also admits that she conspired and agreed with the owner(s) and operator(s) of Home Health Agency #1, a Medicare provider located in the Southern District of Texas, to refer Medicare patients to that home health agency in exchange for illegal health care kickbacks. Defendant admits that she received, directly or indirectly, the approximate sum of more than $170,000 between in or around January 2014 and in or around July 2019, and that these payments were in fact unlawful health care kickbacks in exchange for her referral of Medicare patients to Home Health Agency #1 so that the agency could bill Medicare for home health services. Defendant acknowledges that a Physician Consulting Agreement, signed by her, and prepared by her co-conspirators, was an attempt to by her co-conspirators to conceal the nature of the illegal health care kickback

relationship between her and Home Health Agency #1. Furthermore, while Defendant may have provided some amount of legitimate services for patients she referred to Home Health Agency #1, the nature of the payments from the home health agency were illegal health care kickbacks. The parties agree that this conduct is relevant conduct under Section 1B1.3 of the sentencing guidelines. As the result of all of the Defendant's conduct described herein, Tricare and Medicare were fraudulently billed collectively by Pharmacy 2, Laboratory 1 and Home Health Agency #1 an amount in excess of $1.5 million but less than $3.5 million.

The foregoing facts do not describe all the details of the conspiracy, or Defendant's complete knowledge of the scheme, but are offered for the limited purpose of establishing a sufficient factual basis to support Defendant's plea of guilty to the charges of conspiracy to defraud the United States and to receive health care kickbacks and associated relevant conduct.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 11/12/19

By: _____
KEVIN J. LARSEN
ASSISTANT UNITED STATES ATTORNEY

Date: 11/12/19

By: _____
DAVID OSCAR MARKUS, ESQ.
ATTORNEY FOR DEFENDANT

Date: 11/12/19

By: _____
MANGALA RAMAMURTHY, M.D.
DEFENDANT