UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20710-CR-ALTONAGA(s)(s)

UNITED STATES OF AMERICA

vs.

THOMAS SAHS,

    Defendant.

_____/

## FACTUAL PROFFER

The office of the United States Attorney for the Southern District of Florida and the Defendant Thomas Sahs ("Defendant") stipulate and agree that the following facts are true and correct and that such facts provide a sufficient factual basis for a plea of guilty to Count 1 of the Second Superseding Indictment, which charges Defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.

Beginning in or around January of 2015, and continuing through in or around July of 2015, Defendant conspired and agreed with John Scholtes ("Scholtes"), Senthil Ramamurthy ("Ramamurthy"), Rajesh Mahbubani ("Mahbubani"), Anthony Mauzy ("Mauzy"), Mangala Ramamurthy ("Dr. Ramamurthy"), Asif Uddin ("Uddin"), Jenifer John Carbon ("Carbon") and others to commit health care fraud through the submission of false and fraudulent claims to the Tricare program. Tricare is a federal health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that provides civilian health benefits for military personnel, military retirees, and military

1

dependents. Defendant's scheme involved causing the submission of false and fraudulent claims (including those claims set forth in counts 2-9) to Tricare based on prescriptions for pain creams, scar creams and multi-vitamins written with the goal of maximizing adjudication amounts without regard to medical necessity which were billed through Pharmacy 1, Pharmacy 2 and other pharmacies. Pharmacy 1 was a compounding pharmacy in the Middle District of Florida. Pharmacy 2 was a compounding pharmacy located in the Northern District of Oklahoma. Defendant was an owner of MHQ Ventures, LLC. ("MHQV"), a Texas company with a principal place of business in Austin, Texas. Ramamurthy was an owner of SKR Services and Ventures LLC, (SKR) a Florida company with its principal place of business in Miami, Florida.

During the course of the charged conspiracy the Defendant and his co-conspirators targeted Tricare beneficiaries on U.S. military bases and elsewhere for purposes of signing them up to receive prescriptions for expensive compounded medications promoted without regard for medical necessity and paid for by the Tricare program. In fact, the only purpose in targeting Tricare beneficiaries was the lucrative 50% (less a modest cost of goods sold) kickback paid to SKR by Pharmacies 1 and 2 for each prescription Defendant and his co-conspirators referred to the pharmacies that was paid for by Tricare.

During the conspiracy, Defendant and his co-conspirators received approximately $3.4 million in kickbacks in exchange for referring Tricare prescriptions for numerous beneficiaries to Pharmacies 1 and 2. These kickbacks were funneled from the pharmacies through SKR and then a portion of this amount (at least the approximate sum of $750,000) to the Defendant and co-conspirators Sahs and Mauzy either individually or through their

company MHQV (including those kickback payments set forth in counts 12, 14, 17, 19, 21-22, and 24). The Defendant in turn paid "sales reps" to target Tricare beneficiaries. The sales reps induced Tricare beneficiaries to "sign up" for the expensive drugs without regard to any legitimate medical need and often times based on false representations and material omissions including, by way of example, claims that the drugs were custom designed for the patient. In fact, the prescription formulations were not customized for individuals based on specific medical needs but developed to generate increased revenue from Tricare. Based on the claims submitted in this case, Tricare reimbursed Pharmacies 1 and 2 thousands of dollars a month for a single compounded medication product. For example, as set forth in count 4, Tricare reimbursed the approximate amount of $23,790 for a one-month supply of scar cream.

After obtaining the beneficiaries' information, Defendant and his co-conspirators routed the beneficiary information and a pre-printed prescription to a telemedicine company for ratification. Defendant and his co-conspirators paid between approximately $75 and $90 per consultation, prescriptions ratified by the telemedicine companies. Often times, as in the case of Dr. Ramamurthy who ratified prescriptions, or Carbon, who forged the name of a doctor under her employ, the doctor never even examined the patient. Defendant and his co-conspirators paid the sales reps a kickback of approximately $350 to $500 for every prescription that they induced and that was adjudicated by Tricare.

In furtherance of the conspiracy, in or about February 2015, Defendant along with co-conspirators Mahbubani and Mauzy formed MHQV, in part to conceal their receipt of kickbacks. On or about February 17, 2015, the Defendant signed an MHQV Shareholder

Agreement the purpose of which was to equitably split kickbacks received in exchange for referrals to Pharmacies 1 and 2. On or about March 16, 2015 the Defendant corresponded with co-conspirator Mauzy about a spreadsheet containing "proposed payouts" to "sales reps." On or about March 23, 2015 the Defendant corresponded with co-defendant's Scholtes, Mauzy, Mahbubani, Uddin, Carbon and others about circulating and using a "Telemedicine Script Pad 3-23-2015." The formulations contained on this script pad were designed solely to maximize reimbursement from Tricare and not to serve any specific legitimate medical purpose.

On or about March 24, 2015 the Defendant corresponded with co-conspirators about using MHQ nurses to "document medical necessity as we see fit." On or about April 13, 2015, the Defendant e-mailed co-conspirator Uddin about Tricare beneficiary A.C. about paying a copay for A.C. so that A.C. would not cancel his order for compounded medications.

During the course of this conspiracy the Defendant and other charged co-conspirators used false pretenses to gain access to U.S. military bases where they targeted Tricare beneficiaries. On multiple occasions throughout the conspiracy the Defendant and other charged co-conspirators, including Scholtes, sent pre-printed prescription pads to telemedicine companies directing those companies which script to use and where to send patients. The Defendant and the other charged co-conspirators, including Scholtes, directed the transfer of patients between various pharmacies for the primary purpose of concealing the unlawful nature of the scheme. One such example occurred on or about April 7, 2015, when the Defendant and co-conspirators corresponded by e-mail about

4

moving patients from Pharmacies 1 and 2 to another compounding pharmacy located in the Central District of California.

The foregoing facts do not describe all the details of the offense conduct, or Defendant's complete knowledge of the scheme, but are offered for the limited purpose of establishing a sufficient factual basis to support Defendant's plea of guilty to the charges of conspiracy to defraud the United States and to receive health care kickbacks.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 12\13\19       By: _____
                     KEVIN J. LARSEN
                     ASSISTANT UNITED STATES ATTORNEY

Date: 12/13/2019     By: _____
                     ANDREW FELDMAN, ESQ.
                     ATTORNEY FOR DEFENDANT

Date: 12-13-19       By: _____
                     THOMAS SAHS
                     DEFENDANT