UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20710-CR-ALTONAGA(s)(s)

UNITED STATES OF AMERICA

vs.

JOHN SCHOLTES,

Defendant.
_____/

**FACTUAL PROFFER**

The office of the United States Attorney for the Southern District of Florida and the Defendant John Scholtes ("Defendant") stipulate and agree that the following facts are true and correct and that such facts provide a sufficient factual basis for a plea of guilty to Count 1 and Count 39 of the Second Superseding Indictment, which counts charge Defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, and conspiracy to defraud the United States and to receive health care kickbacks, in violation of Title 18, United States Code, Section 371.

Beginning in or around January of 2015, and continuing through in or around July of 2015, Defendant conspired and agreed with Senthil Ramamurthy ("Ramamurthy"), Anthony Mauzy ("Mauzy"), Thomas Sahs ("Sahs"), Rajesh Mahbubani ("Mahbubani"), Mangala Ramamurthy ("Dr. Ramamurthy"), Asif Uddin ("Uddin"), Jennifer John Carbon and others to commit health care fraud through the submission of false and fraudulent claims to the Tricare program. Tricare is a federal health care benefit program affecting

1

commerce, as defined in Title 18, United States Code, Section 24(b), that provides civilian health benefits for military personnel, military retirees, and military dependents. The scheme involved the submission of false and fraudulent claims (including those claims set forth in counts 2-9) to Tricare for expensive and medically unnecessary pain creams, scar creams and a multi-vitamins which were billed through Pharmacy 1, Pharmacy 2 and other pharmacies. Pharmacy 1 was a compounding pharmacy in the Middle District of Florida. Pharmacy 2 was a compounding pharmacy located in the Northern District of Oklahoma. Defendant was the owner of EMET Advisors, Inc. a Florida company with its principal place of business in Boca Raton, Florida. Ramamurthy was the owner of SKR Services and Ventures LLC, (SKR) a Florida company with its principal place of business in Miami, Florida. Defendant and Ramamurthy negotiated an agreement with ~~Pharmacy 1 and~~ Pharmacy 2 whereby SKR collectively received approximately 50% of the reimbursements (less a modest cost of goods sold) from Tricare for every prescription referral.

During the conspiracy, SKR received approximately $3.4 million in kickbacks in exchange for referring Tricare prescriptions for numerous beneficiaries to Pharmacies 1 and 2. Throughout the conspiracy, Ramamurthy, through SKR. paid hundreds of thousands of dollars in kickbacks (including those kickback payments set forth in counts 12, 14, 17, 19, 21-22, and 24) to co-conspirators Mauzy, Sahs, and Mahbubani either individually or through their company MHQ Ventures LLC. SKR paid an additional $283,000 in kickbacks to co-conspirator Uddin (including those kickback payments set forth in counts 25-26, 30 and 35). Those co-conspirators in turn paid "sales reps" to target Tricare beneficiaries. The sales reps induced Tricare beneficiaries to "sign up" for the expensive

drugs without regard to any legitimate medical need and often times based on false representations and material omissions including, by way of example, claims that the drugs were custom designed for the patient. In fact, the prescription formulations were not customized for individuals' specific medical needs but developed to generate increased revenue from Tricare. Based on the claims submitted in this case, Tricare reimbursed Pharmacies 1 and 2 thousands of dollars a month for a single compounded medication product. For example, as set forth in count 4, Tricare reimbursed the approximate amount of $23,790 for a one month supply of scar cream. Based on these referrals Tricare paid claims to Pharmacies 1 and 2 in the approximate sum of $6,314,170.

After obtaining the beneficiaries' information, Defendant and his co-conspirators routed the beneficiary information and a pre-printed prescription to a telemedicine company for ratification and paid between approximately $75 and $90 per consultation, for prescriptions ratified by the telemedicine companies. Often times, as in the case of Dr. Ramamurthy who ratified prescriptions, or Carbon, who forged the name of a doctor under her employ, the doctor never even examined the patient. Defendant and his co-conspirators also paid the sales reps a kickback of approximately $350 to $500 for every prescription that they induced and that was adjudicated by Tricare.

During the course of this charged conspiracy, Defendant received approximately $447,000 (including those kickback payments set forth in counts 15-16, and 28), in kickbacks in exchange for among other things: (1) disseminating pre-printed prescription pads containing formulations for compounded medications devised for maximum

3

reimbursement and not for any individual's medical need; and (2) negotiating contracts with telemedicine companies.

In or about the fall of 2014, the Defendant introduced co-conspirators Ramamurthy and Carbon to one another. During the course of this conspiracy, other charged co-conspirators used false pretenses to gain access to U.S. military bases where they targeted Tricare beneficiaries. On multiple occasions throughout the conspiracy the Defendant and other charged co-conspirators, sent pre-printed prescription pads to telemedicine companies directing those companies where to send patients. .

After Tricare significantly curtailed its reimbursement for compounded medications in approximately June, 2015 the Defendant, Ramamurthy Sahs, Mauzy and Mahbubani identified and pursued a potential new scheme in the form of targeting health care programs with insurance benefits for Cancer Genomic tests ("CGx"). Beginning in or around July of 2016 through at least December of 2017, Defendant, Ramamurthy, Dr. Ramamurthy and others conspired to defraud the United States and to receive health care kickbacks targeting Medicare beneficiaries to receive expensive CGx testing from Laboratory 1 located in the Northern District of Georgia. CGx testing is a highly complex and specialized type of genetic test designed to look for errors in genes that are associated with cancer. Medicare authorizes payment for medically necessary CGx testing only when prescribed by the patient's treating physician for the purpose of managing the patient's specific medical condition, and the patient has a cancer diagnosis or a personal history of cancer. Medicare is a health care benefit program affecting commerce, as defined by Title 18, United States

Code, Section 24(b), and a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f).

As part of this scheme, Defendant and co-conspirator Ramamurthy negotiated a kickback arrangement with Laboratory 1 where the lab agreed to pay 45% (minus a modest pre-negotiated cost of goods sold) of the amount reimbursed to Laboratory 1 by Medicare for each CGx test referred by Ramamurthy's company, Q Health Services, LLC. ("Q Health").

In furtherance of the scheme, his co-conspirators targeted locations where Medicare and Medicaid patients were known to be in high concentration such as, for example, adult day care and senior living centers and health fairs. Ramamurthy through Q Health, paid "marketers" to go to these locations and collect DNA saliva samples from Medicare beneficiaries. As part of this scheme, Ramamurthy recruited the services of Dr. Mangala Ramamurthy, to ratify orders for CGx tests for patients she had no valid doctor-patient relationship with. In all, Laboratory 1 paid kickbacks to his co-conspirators totaling approximately $1,527,590 for numerous Medicare referrals during the conspiracy. Based on these referrals, Medicare paid Laboratory 1 approximately $3,322,006.

In furtherance of this conspiracy, Scholtes e-mailed the CEO of Laboratory 1 on or about July 27, 2016 from the Southern District of Florida to the Northern District of Georgia, negotiating the percentage to be paid for each CGx referral Q Health sent to Laboratory 1. On or about September 22, 2016, Dr. Ramamurthy completed and submitted to Laboratory 1, a Provider's Preferred Order Form and provider authorization. On or about November 16, 2016 and December 14, 2016, respectively, co-conspirator Dr.

Ramamurthy signed requisition forms ordering CGx testing for Medicare patients M.M. and A.C. Laboratory 1 paid Q Health a kickback in the approximate sum of $74,217 on or about February 1, 2017, and this amount included a payment for the referral of Medicare patient A.C. On or about February 20, 2017, in response to concerns about low Medicaid reimbursement for CGx samples referred by Q Health, Defendant sent an e-mail from the Southern District of Florida to a principal of Laboratory 1 in the Northern District of Georgia regarding a "CGx Org. Call to review protocols and reimbursements." In addition, Defendant sent text messages to one or more employees of Laboratory 1 on or about April 17, 2017, May 1, 2017 and May 15, 2017 regarding receipt of payment from Laboratory 1 in exchange for Q Health's referrals of completed CGx samples.

The defendant admits that in or about late 2018 through in or about early 2019, he also participated in a similar scheme to defraud Medicare by receiving approximately $250,303 in kickbacks and bribes in exchange for referring CGx samples to Spectrum and Metric laboratories.

The foregoing facts do not describe all the details of the conspiracies, or Defendant's complete knowledge of the scheme, but are offered for the limited purpose of establishing

a sufficient factual basis to support Defendant's plea of guilty to the charges of conspiracy to defraud the United States and to receive health care kickbacks.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 12/16/19        By: _____
                          KEVIN J. LARSEN
                          ASSISTANT UNITED STATES ATTORNEY

Date: 12/16/19        By: _____
                          JEFFREY MARCUS, ESQ.
                          ATTORNEY FOR DEFENDANT

                      By: _____
                          DANIEL RASHBAUM, ESQ.
                          ATTORNEY FOR DEFENDANT

Date: 12/16/19        By: _____
                          JOHN SCHOLTES
                          DEFENDANT