UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20710-CR-ALTONAGA(s)(s)

UNITED STATES OF AMERICA

vs.

SENTHIL RAMAMURTHY,

        **Defendant.**

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Sentencing Memorandum in aid of sentencing Defendant Senthil Ramamurthy ("Ramamurthy") for his role in spearheading a sophisticated nation-wide multi-million dollar criminal health care fraud scheme targeting both Tricare and Medicare over a four-year period. The Presentence Investigation Report ("PSR") (DE 334) calculates Ramamurthy's Adjusted (Subtotal) Offense Level of 35 (*Id.* ¶121), which includes a two-point upward adjustment for Ramamurthy's intentional engagement in a sophisticated fraud scheme (USSG 2B1.1(b)(10)(C)). (*Id.* ¶117), and a four-point upward adjustment for Ramamurthy's role as an organizer and/or leader of the criminal activity for which he has been convicted. *Id.* ¶119.

In his papers (DE 346), Defendant objects to (1) the proposed sophisticated means enhancement; and (2) the organizer/leader role enhancement. Defendant also asks this Court to vary downward from applicable guidelines based on factors contained in Title 18, United States Code, Section 3553. For the reasons set forth below, the government contends that the guidelines are properly calculated, the resulting guideline range is 121-151 months imprisonment, and that a guidelines sentence is warranted as a just and appropriate disposition in this case.

1

### I. Factual and Procedural Background

On November 12, 2019, Defendant pled guilty to one count of conspiracy to commit health care fraud and one count of conspiracy to defraud the United States and to receive health care kickbacks (Plea Agreement) (DE 241) ¶1). In the written plea agreement, Defendant and the government agreed that the base offense level was six (6) pursuant to USSG § 2B1.1(a)(2). *Id.*, ¶8(a). The parties further agreed that the actual loss to the government from Defendant's conduct exceeded $9.5 million but did not exceed $25 million, increasing the offense level by 20 points. *Id.,* ¶8(b). The parties also agreed that a three level enhancement applied to the Defendant's conduct because losses to Government health care programs exceeded $7 million. *Id.*

As factual support for the plea, Defendant admitted in a signed factual proffer, which the Court reviewed with him at the change of plea hearing, that he owned SKR Services and Ventures, LLC, (SKR) and Q Health Services, LLC ("Q Health") (Factual Proffer Statement) (DE 242)), and that he along with numerous charged and uncharged co-conspirators, which he personally recruited into the scheme, used these companies and other LLC's to receive and pay millions of dollars in kickbacks related to referring prescriptions for compounded medications and Cancer Genomic Tests (CGx) to compounding pharmacies and genetic testing laboratories respectively. *Id.* at 2.

The Defendant admitted that his fraud scheme involved targeting Tricare and Medicare beneficiaries to sign up for expensive and medically unnecessary products and inducing those beneficiaries to do so based on false representations and material omissions. *Id.* at 3. In connection with defrauding Tricare, Defendant admitted to using false pretenses to achieve access to U.S. military bases so that they could target uniformed service members and their families. *Id.* at 5. In furtherance of defrauding Medicare, Defendant dispatched accomplices to adult day care

centers, senior living centers and elsewhere to target persons covered by Medicare to receive medically unnecessary CGx tests. DE 242 at 5-6. Defendant admitted that his fraud schemes caused collective losses to Tricare and Medicare in excess of $9.6 million. DE 241 at ¶ 8(b).

The Defendant further admitted that as part of the fraud scheme he and his co-conspirators paid telemedicine companies between $75 and $90 for each pre-printed prescription or CGx test ratified by doctors under their employ who often never even examined the patients. DE 242 at 3. Defendant also admitted to recruiting the services of multiple co-conspirators into his scheme including his very own mother, a physician who ratified prescriptions for compounded medications dispensed by compounding pharmacies, and who also approved and referred DNA CGx samples to genetic testing laboratories without regard to medical necessity. *Id.* at 3, 6-7. Defendant also agreed that he, in execution of his fraud schemes, directed the activities of co-conspirators such as for example, instructing accomplices to "fill out everything on the script, except the signature…" including instructions to "always 12 refils, auto refil, 240 [grams.]" *Id.* at 4. Ramamurthy also admitted to telling co-conspirators to pay co-pays for patients using "pre-paid visa" cards. *Id.* When Ramamurthy learned that Tricare stopped paying for a particular formulation, he instructed his accomplices to switch to a product that did reimburse. *Id.* at 5.

During his plea colloquy the Defendant also acknowledged his efforts to disguise the fraud scheme by directing co-conspirators to establish LLCs to which SKR would funnel kickback payments. DE 242 at 4-5. Ramamurthy and his co-conspirators directed the transfer of patients between various pharmacies, including Pharmacy 1 in Florida and Pharmacy 2 in Oklahoma, for the primary purpose of concealing the unlawful nature of the scheme. *Id.* at 5.

3

## II. Government's Response to Defendant's Guideline Objections.

### A. *Defendant Was an Organizer/Leader of the Criminal Activity*

The PSR assigns Defendant a four-point enhancement pursuant to USSG §3B1.1(a) based on his role as an organizer/leader of criminal activity that involved five or more participants or was otherwise extensive. DE 334 ¶119.   To qualify for a role enhancement under the guidelines, a defendant must (1) organize, lead, manage or supervise the criminal activity, and (2) the criminal activity must involve five or more participants or be otherwise extensive. USSG §3B1.1; *see also United States v. Sosa*, 777 F.3d 1279, 1301-02 (11th Cir. 2015). A "participant" includes anyone "who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1, comment. (n.1).

It is undisputed that there were at least five participants involved in the defendant's fraud scheme.[1]   In evaluating whether a participant to a scheme is a leader or organizer the court should "consider factors such as: (1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others." *United States v. Oscar Guardarrama-Suarez,* No. 18-14378 (11th Cir. December 19, 2019) *citing* U.S.S.G. § 3B1.1, cmt. n.4.  While the enhancement does not require a showing of the presence of *all* the factors, *United States v. Dixon,* 901 F.3d 1322, 1348 (11th Cir. 2018), "there

---

[1] The second superseding indictment in the instant case [DE 117] charged a total of six defendants (including Ramamurthy) all of which have pled guilty.   Moreover, at least three other co-conspirators were separately charged and convicted.   *See United States v. Jenifer John Carbon,* Case. No. 18-20690-CR-Ungaro; *United States v. Asif Udin,* Case. No. 18-20546-CR-Gayles; *United States v. Karl Voeller,* Case. No. 18-20549-CR-Moreno.

must be evidence that the defendant exerted some control, influence or decision-making authority *over another participant in the criminal activity." United States v. Martinez,* 584 F.3d 1022, 1026 (11th Cir. 2009) (emphasis added). The district court's interpretation of these factors is entitled to deference on appeal. *United States v. Vallejo,* 297 F.3d 1154m 1169 (11th Cir. 2002).

The facts show that the health care fraud schemes at issue in this case began with Ramamurthy. He organized these schemes from their inception, he recruited all of the charged co-conspirators into the scheme into the action and he enjoyed the majority of the financial spoils. The scheme began in South Florida with Ramamurthy, who recruited Uddin, Scholtes, and Carbon to join him in targeting Tricare beneficiaries for compounding pharmacies located in Florida and Oklahoma. DE 242 at 1-2. Shortly after, Ramamurthy recruited his mother Dr. Ramamurthy, as well as Mauzy, Sahs and Mahbubani in Texas. DE 117 at ¶¶14-15, 17, 20-24, 30-31. Together the defendants and other accomplices located in California targeted Tricare beneficiaries residing on military bases nationwide. Later when Tricare reimbursement for compounded medications became significantly reduced, the Defendant turned to a new scheme targeting Medicare beneficiaries across the country, including those residing in adult day care centers in Ramamurthy's hometown of McAllen, Texas and elsewhere for medically unwarranted CGx tests performed by a laboratory in Georgia paying the Defendant kickbacks for every test his company (Q Health) referred. DE 242 at 5-6.

Each of the factors weigh in favor of sustaining the organizer/leader role enhancement in this case. Defendant opened and controlled SKR and Q Health, the principal entities responsible for funneling the millions of dollars in kickbacks to the other accomplices. DE 117 ¶¶ 17-18, 20. He controlled these entities' corporate bank accounts and as such, he exercised decision-making authority at his business, including who to pay and how much. To be sure, he hired/recruited

conspirators and accomplices to help run the business and participate in the fraud, yet he did not yield decision making to them. In fact, the factual proffer is replete with instances demonstrating Ramamurthy's exercise of authority over participants, such as for example, dictating how a script should be filled out, how many refills to write in, how to cover co-pays, and when to switch out one formulation for another. DE 242 at 4-5. And, as Defendant admitted in his factual proffer, it was he who ultimately paid his accomplices kickbacks for performing operational aspects of the fraud, such as in the case of Scholtes who ran the telemedicine aspect (*Id.* at 4), or Carbon who oversaw a Miami clinic (*Id.*), or in the case of Uddin, Mauzy, Mahbubani, and Sahs, Ramamurthy paid them kickbacks for referring fraudulent scripts for their referrals. *Id.* at 2-3.

In all, Defendant received the bulk of the spoils from his schemes, approximately $3 million, while his co-conspirators got comparatively smaller shares. This pattern exemplifies the relative hierarchy of the scheme; the Defendant as the leader/organizer, obtained nearly 50% of the reimbursement for scripts tied to medically unnecessary compounded medications and CGx tests referred by Defendant, the Defendant's co-conspirators received a smaller percentage of amounts reimbursed tied to their referrals. In total, there were thousands of fraudulent claims submitted for hundreds of Tricare and Medicare beneficiaries resulting in at least $9.6 million in fraud proceeds, half of which were controlled by Defendant.

### B. *Sophisticated Means*

The PSR recommends that defendant receive a two-point enhancement pursuant to Section 2B1.1(b)(10)(C) because the offense of conviction involved "sophisticated means." DE 334 ¶ 117. This enhancement applies to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," and ordinarily includes "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore

financial accounts." USSG § 2B1.1 cmt. n.8(B). Each action itself need not be sophisticated; "it is sufficient if the totality of the scheme was sophisticated." *United States v. Barrington,* 648 F.3d 1178, 1199 (11th Cir. 2011) (explaining that "[r]epetitive and coordinated conduct, though no one step is particularly complicated, can be a sophisticated scheme.") (quoting *United States v. Finck*, 407 F.3d 908, 915 (8th Cir.2005)). Recent amendments to the enhancement require that "the defendant intentionally engaged in or caused the conduct constituting sophisticated means." USSG §2B1.1(b)(10)(C).

Here, defendant's health care fraud scheme was sophisticated within the meaning of the guidelines for several reasons. First, it is clear as discussed above that the totality of the scheme was sophisticated as it spanned nearly four years, involved numerous accomplices in multiple states and resulted in millions of dollars in fraud losses to two federal health care programs. The Defendant's conduct in this regard was both repetitive and coordinated. Second, the factual record demonstrates that the Defendant took *intentional* and specific steps to *conceal* the unlawful nature of the scheme by directing co-conspirators to form limited liability companies in order to disguise the kickback scheme. Ramamurthy also admitted that he and others moved patients between compounding pharmacies for the "primary purpose of concealing the unlawful nature of the scheme." In his own papers the Defendant acknowledges the use of legal counsel to provide nothing more than "a patina of legitimacy" to a practice he knew was illegal. These alone are sufficient indicia of sophistication that warrant the enhancement. Additional facts supporting the enhancement include the Defendant's admission that he and other accomplices gained access to military bases using false pretenses [DE 242 at 5]; and they disseminated "pre-printed prescription pads containing formulations for compounded medications devised for maximum reimbursement and not for any individual's medical need." *Id.* at 4. Ramamurthy also paid doctors, including his

7

own mother, to falsify prescriptions and requisition forms that he later referred to compounding pharmacies and genetic testing laboratories in exchange for millions of dollars in kickbacks. DE 242 at 3-4, 6-7.

### III.     A Downward Variance is Unwarranted.

Once the guidelines are properly calculated, the Court must determine the appropriate sentence after considering the factors set forth in 18 U.S.C. § 3553(a).[2] Defendant cites no basis for a downward variance. It is the government's position that the factors in § 3553(a) support a guideline sentence.

A guideline sentence is appropriate to reflect the seriousness of this type of offense, promote respect for the law, and to deter others from engaging in this type of crime. The nature of the defendant's offense is very serious. This was a sophisticated, well-planned scheme that methodically defrauded Tricare and Medicare out of at least $9.6 million over the course of about 4 years. The scheme involved many individuals and spanned across the country. And as a result Defendant paid himself more than $3 million of the almost $5 million in kickbacks stemming from his fraud scheme. That such a significant fraud can be characterized by Defendant as "an ordinary Medicare fraud scheme," that is neither "financially complex," nor "intricate" in this jurisdiction

---

[2] Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... (5) any pertinent policy statement (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

only underscores the problem. The Defendant's scheme here is not the type of "ordinary Medicare fraud scheme" typically adjudicated by this Court. *See, e.g., United States v. Guardarrama-Suarez,* Case No. 18-20508-Altonaga (S.D. Fla.) (Defendant convicted of one count of conspiracy to commit health care fraud relating to using a pharmacy he owned to bill for products he did not dispense. Defendant's fraud scheme resulted in losses to Medicare of approximately $1.7 million. Defendant sentenced to 92 months incarceration).

Deterrence is another key consideration in fashioning a sentence in this type of case. It is well-documented that health care fraud is rampant in South Florida despite great efforts to combat it. The Eleventh Circuit has specifically commented on the special need for deterrence in cases like this:

> [D]eterrence is an important factor in the sentencing calculus because health care fraud is so rampant that the government lacks the resources to reach it all. Thus, when the government obtains a conviction in a health care fraud prosecution, one of the primary objectives of the sentence is to send a message to other health care providers that billing fraud is a serious crime that carries with it a correspondingly serious punishment.

*United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013). That rationale applies with equal force in this case.

One additional consideration that the government respectfully requests this Court consider in connection with Defendant's request for a sentencing variance, is the fact that the Defendant despite purloining millions of dollars from health care programs established to serve the military, the elderly, blind and disabled, has not returned a single penny to the government. Nor has Mr. Ramamurthy, at least to this date, provided the government or this Court with any tangible information likely to lead to the recovery of restitution. *See* DE 334 ¶¶ 156-162.

Based upon the foregoing considerations, the government respectfully requests that the

Court overrule defendant's objections to the PSR, and impose a sentence within the guidelines.

                               Respectfully submitted,

                               ARIANA FAJARDO ORSHA
                               UNITED STATES ATTORNEY

By:  *s/Kevin J. Larsen*
      Kevin J. Larsen
      Assistant United States Attorney
      Special Court No. A5501050
      99 Northeast 4th Street, Suite 400
      Miami, Florida 33132-2111
      Tel. (305) 961-9356
      Fax (305) 530-7976
      E-Mail: Kevin.Larsen@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 30, 2019, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                                  *s/Kevin J. Larsen*
                                                  Kevin J. Larsen
                                                  Assistant United States Attorney